UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　　　　　　　　　　　　　)<br>　　Plaintiff, 　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>v. 　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>JORGE YEPES 　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　Defendant. 　　　　　　　　　)<br>_____) | CRIMINAL NO. 08 CR 537<br>(RJH) |

## JORGE YEPES'S MOTION TO DISMISS COUNTS 1 , 2 AND 3 OF THE INDICTMENT

Defendant Jorge Yepes, through counsel, respectfully files this Motion to Dismiss Counts 1, 2 and 3 in the Indictment in this action.

## INTRODUCTION

The U.S. Attorney's Office for the Southern District of New York has initiated an unprecedented federal prosecution under the wire fraud statute, accusing Mr. Yepes of violating federal law by allegedly lying to a job search firm in order to obtain a job. Undersigned counsel has been unable to find another such prosecution – based on an alleged lie to a private search firm to get a job with a private employer – in the country.[1] To interpret the wire fraud statute to

---

[1] There have been prosecutions based on the so-called salary deprivation theory in the context of public jobs.  Even in that context, courts have split as to whether such prosecutions are legitimate under the wire and mail fraud statutes. *Compare United States v. Ratcliff,* 488 F.3d 689 (5th Cir. 2007) (rejecting salary theory); *United States v. Turner,* 465 F.3d 667 (6th Cir. 2006) (rejecting salary theory); *United States v. George,* 1987 WL 48848, at *2 (W.D.Ky. Oct.20, 1987) (rejecting salary theory); *Ingber v. Enzor,* 664 F.Supp. 814, 821-22 (S.D.N.Y.1987) (rejecting salary theory)
with *United States v. Webb,* 689 F.Supp. 703, 707-08 (W.D.Ky. 1988) (accepting salary theory); *United States v. Schermerhorn,* 713 F.Supp. 88, 92 (S.D.N.Y. 1989) (calling salary theory a close call but accepting it because case dealt with public corruption and calling situation uncertain).

permit a prosecution for a misrepresentation on a job application or a resume would open the floodgates of federal criminal justice system, recognizing cases of falsely stating that one's GPA was 3.7 instead of 3.5 or falsely stating that one was fluent in Spanish when one was only proficient, to name only a few. The reach of the wire fraud statute does not stretch this far.

As a matter of law, such an unprecedented theory fails. Mr. Yepes' statements could not have unlawfully deprived anyone of any money or property, as Mr. Yepes always intended to perform his job duties in exchange for his salary. Accordingly, because the government cannot establish this critical element of the wire fraud statute, the complaint should be dismissed. Even if this Court finds that there is probable cause that a crime was committed, Mr. Yepes should receive a very low personal surety bond.

## PROCEDURAL HISTORY

Mr. Yepes, a man with no criminal history, surrendered to the FBI Thursday afternoon after finding out there was a warrant for his arrest on Thursday morning.

The complaint on which the warrant is based charges Mr. Yepes with three violations of wire fraud – trying to deprive a recruiting company and a potential employer out of "property" by lying about his qualifications for the job.

## DISCUSSION

A.  *Motion to Dismiss*

Even if all the allegations are true, the government's theory does not meet the elements of wire fraud; therefore, the counts relating to wire fraud must be dismissed. To set forth a claim for wire fraud, the government must show:

> 1) That the defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations or

    promises; 2) that the false representations related to a material fact; 3) that the defendant intended to create a scheme "reasonably calculated to deceive persons of ordinary prudence and comprehension"; 4) that the defendant did so willfully and with an intent to defraud; and 5) that the defendant transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud.

*United States v. Svete*, 521 F.3d 1302 (11th Cir. 2008). The government's complaint, even if accepted as true, cannot satisfy the first element.

    Admittedly, this request to dismiss these counts in the indictment is unusual. But the theory against Mr. Yepes is unusual because it is predicated on conduct which posed no risk of financial loss or economic harm to the so-called "victims" of the alleged fraud schemes – the search firm or the potential employer.

    The government's theory is that Mr. Yepes's conduct, if believed, would have deprived the search firm and the potential employer of "money" or "property" by misleading them about his qualifications and his past. Such a theory must fail because Mr. Yepes intended to perform the work for his salary and therefore the employer would not have lost any money or property by paying him his salary (the search firm would not have lost anything in any event).

    ***Money and Property defined***. Mr. Yepes never intended to defraud the potential employer of money or property. Instead, he intended to work and perform his duties if hired in exchange for his salary. Although there is no case directly on point, there are a number of analogous cases demonstrating that Mr. Yepes's alleged conduct – misrepresentations to obtain the job – would not have unlawfully deprived the potential employer out of money or property. For example, the majority of courts have rejected a "salary deprivation theory" in the public employment context. See footnote 1, *infra*. The theory is even more tenuous in the private sector, where the public fisc is not exposed.

–5–

Other analogous cases have also rejected similar theories. *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992) (finding the alleged victim not deprived of money or property where buyers of American technology promised that it would be used in U.S. but in actuality buyers intended to ship technology to Soviet Union); *United States v. Mittelstaedt*, 31 F.3d 1208 (2nd Cir. 1994) (finding that where there was no fiduciary duty between the parties – like the case here – that "lack of information that might have an impact on the decision regarding where government money is spent, **without more**, is not a tangible harm and therefore does not constitute a deprivation of section 1341 'property'"); *United States v. Handakas*, 286 F.3d 92 (2nd Cir. 2002), *cert. denied*, 537 U.S. 894 (2002) ("For present purposes, we see no principled distinction between the duties breached by Handakas and the garden-variety contractual duties usually collected under the rubric of 'representations and warranties.'"); *see also id.* at 107 (concluding that if Handakas' breach could be prosecuted as mail fraud, "[e]very breach of a contract or state law (committed in the vicinity of a telephone) .... would become punishable as a felony in federal court")[2]; *United States v. Devegter*, 198 F.3d 1324, 1328 (11th Cir. 1999) (in honest services case, requiring that the government prove "the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach'"); *see also id.* at 1330 ("[t]hus a private sector violation of § 1346 honest services fraud involves a breach of a fiduciary duty and reasonably foreseeable economic harm"); *id.* at 1328

---

[2] In *United States v. Rybicki*, 354 F.3d 124, 144 (2d Cir. 2003) (en banc) the Second Circuit, sitting *en banc* overruled the portion of *Handakas* that held Section 1346 unconstitutional. However, a majority (6 of the 11 judges) endorsed the ultimate conclusion in *Handakas* that "because of the nature of the services to be rendered in *Handakas*, an intangible right to honest services did not arise out of the contract at issue in that case." *Rybicki*, 354 F.3d at 144. The majority opinion simply viewed the constitutional basis for that holding in *Handakas* to be "unnecessary." *Id.*

("'[a]n employee's undisclosed conflict of interest does not by itself necessarily pose the threat of economic harm to the employer'") (emphasis added; citation omitted).[3]

## CONCLUSION

Jorge Yepes respectfully requests that the counts 1, 2 and 3 of the Indictment be dismissed against him.

Respectfully submitted,

Johanna S. Zapp

_____
/s/ Johanna S. Zapp
Attorney for Jorge Yepes
12 East 86th Street, Suite 434
New York, NY 10028
Tel. (917) 742-4953
Fax: (917) 492-1879

---

[3] If private sector "intangible rights" mail fraud cases require proof of a threat of "economic harm," surely such a threat must be proven in private sector "property rights" cases. Yet, under the government's theory, no such risk of loss need be shown at all.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed on August 4, 2008, and was served to the parties in this case from that system.

/s/ Johanna S. Zapp
Johanna S. Zapp